IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KATHERINE A. FREY,** | : | **CIVIL NO. 1:10-CV-1457** |
| **Plaintiff** | : | |
| **v.** | : | |
| **GRUMBINE'S RV;** | : | |
| **DAMON MOTOR COACH; and** | : | |
| **MEYER'S RV CENTERS, LLC,** | : | |
| **Defendants** | : | |

# M E M O R A N D U M

On June 14, 2010, Plaintiff Katherine A. Frey ("Frey") brought this civil action in state court seeking relief because of various problems she was having with a 2009 Damon Avanti class A motor home ("motor home"), manufactured by Defendant Damon Motor Coach[1] ("Damon") and purchased from Grumbine's RV[2] ("Grumbine's") on October 28, 2009. Frey alleges that the motor home was defective and seeks damages for breach of contract, breach of the implied covenant

---

[1]     Defendants state that Plaintiff improperly designated Damon Corporation as Damon Motor Coach. Plaintiff does not appear to dispute this fact. Since it is immaterial to the court's decision, the court will refer to Damon Corporation, improperly designated as Damon Motor Coach, simply as "Damon."

[2]     Defendants also contend that Plaintiff improperly designated Grumbine's RV and Meyer's RV Centers, LLC as separate Defendants when in reality Grumbine's RV is simply a name that is sometimes used by Grumbine's RV Center, which itself is a fictitious name used to do business in Pennsylvania by Meyer's RV Centers, LLC. Thus, according to Defendants, the real party in interest is Meyer's RV Centers, LLC d/b/a Grumbine's RV. On September 15, 2010, the court issued a memorandum and order denying Plaintiff's motion to remand this case to state court. (*See* Doc. 20. Mem. & Order, Sept. 15, 2010.) In that memorandum, the court dealt with this issue and found that there was no legal distinction between Grumbine's RV and Grumbine's RV Center, and that Grumbine's RV Center was simply a fictitious name used by Meyer's RV Centers, LLC. (*See id.* at 5-6 of 9.) Thus, throughout this memorandum, the court will refer to the designated Defendants Grumbine's RV and Meyer's RV Centers, LLC, collectively as "Grumbine's."

of good faith and fair dealing, breach of the warranty of merchantability, breach of the warranty of fitness for a particular purpose, and misrepresentation. Frey also seeks to revoke her acceptance of the motor home and rescind the contract.

On July 14, 2010, Damon and Grumbine's removed the case to federal court and promptly filed motions to dismiss the complaint. (*See* Docs. 1-3.) Those motions have been fully briefed and are ripe for disposition.

## I.      Background

### A.      Facts

For the purpose of disposing of Damon's and Grumbine's motions to dismiss, the court takes the following allegations made by Frey in her complaint as true. On October 28, 2009, Frey entered into an agreement to purchase a 2009 Damon Avanti class A motor home from Grumbine's for Ninety Seven Thousand Nine Hundred Eighty Four Dollars and sixty-five cents ($97,984.65). (Doc. 1-2, Compl. ¶ 6.) Prior to the purchase date, Frey had not seen the actual motor home she was purchasing as she had searched for the motor home over the internet and made the deal sight unseen over the phone with a Grumbine's salesman. (*Id.* ¶ 8.)

On October 28, 2009, Frey inspected the motor home while an employee from the service department went over the operation of the motor home's systems with her husband. (*Id.* ¶ 9.) During her inspection, Frey found numerous problems, which she reported to Grumbine's. (*Id.* ¶¶ 10-11; *see also,* Ex. B. to Compl., Repair List.) Grumbine's assured Frey that the motor home was new and that they would repair all of problems that she identified. (Compl. ¶ 11.)

On the night of the purchase, Frey drove the motor home to her home in Winfield, Pennsylvania, which is approximately sixty miles from Grumbine's. (*Id.* ¶ 12.) It was raining the entire ride. Once home, Frey found standing water throughout the inside of the motor home from the bathroom area to the driver's area. (*Id.* ¶ 13.) While searching for the source of the water, Frey also found that the sink drain was leaking, but this was not the cause of the water on the floor. (*Id.* ¶ 14.) That evening, Frey sent an e-mail to an employee of Grumbine's whom they were previously told to contact with any problems. (*Id.* ¶¶ 11(d), 15.)

On November 2, 2009, Frey called Grumbine's and scheduled an appointment for November 12, 2009, to have the problems repaired. (*Id.* ¶ 16.) Days later, on November 5, 2009, Frey took the motor home to a dealer to have a towing system installed on her car and the motor home. During this appointment, Frey found that the furnace worked only sporadically, the leveling jacks would not retract, and the shifter would not move out of the park position. (*Id.* ¶ 17.)

On November 12, 2009, Frey and a friend took the motor home to Grumbine's along with a list of the problems to be repaired. (*Id.* ¶ 18.) On November 16, 2009, Frey returned to Grumbine's to pick up the motor home. They were aware that not everything had been repaired, but wanted to use the motor home for an overnight camping trip. When they arrived at Grumbine's, they met with Grumbine's service manager, Jim Landvater, in order to try out the motor home's operating systems and to check for any additional problems. Mr. Landvater assured Frey that there were no problems with the leveling jacks, but when he tried them they again malfunctioned. (*Id.* ¶ 21.) After waiting for Grumbine's to try to resolve the problem, Frey and her husband decided to return home rather than take the motor

home on their planned trip.  Prior to leaving, Frey spoke to another service manager, Kim Yaeger, as well as the general manager, Greg Bortner, both of whom assured her that they would keep track of the repairs and update her on the progress.  (*Id.* ¶ 23.)

On December 2, 2009, Frey and her husband returned to Grumbine's to pick up the motor home upon their assurance that all repairs were completed except replacement of the carpet in the bedroom area.  (*Id.* ¶ 24.)  While at Grumbine's, Frey tested the leveling jacks and they again failed to function properly.  (*Id.* ¶ 25.) This problem was fixed by Grumbine's that day, and Frey was able to drive the vehicle home.

On December 15, 2009, Frey and a friend attempted an overnight trip, but it was unsuccessful because the furnace in the motor home did not work.  On that same day, Frey called Grumbine's who authorized her to take the motor home to a local dealer in Selinsgrove for repair of the furnace.  The dealer purged the gas lines of stale gas and got the furnace to work.

On December 26, 2009, Frey found water on the dash board from a leak at the top of the windshield, and water on the floor just behind the carpeted area of the driver's seat.  Additionally, the automatic step would not retract and wires were continually exposed underneath the dining banquet "when the slide-out was extended."  (*Id.* ¶ 28.)  On December 28, 2009, Frey called Grumbine's to report the problems to Kim Yaeger, and informed her that they would be leaving for a trip to Florida the next day.  Ms. Yaeger agreed to send a technician to Frey's house for repairs since the motor home could not be driven with the step in the extended position.  On December 29, 2009, a technician arrived at Frey's home to apply

sealant to the windshield, attach wires under the dining banquet, and repair the step by removing gravel that had blocked the magnet switch to operate the automatic steps. (*Id.* ¶ 30.) The technician informed Frey that if the leaks continued she should ask for a seal test to check for leaks. (*Id.*)

On January 16, 2010, Frey's husband entered the motor home and again found the front driver/passenger area carpet soaking wet and the floor in the bathroom wet. (*Id.* ¶ 31.) On January 18, 2010, Frey and a friend returned the motor home to Grumbine's for additional repairs. Frey requested a seal test, reported the wires under the banquet were again unattached and exposed when the slide-out was extended, and requested new bedroom carpeting as it was dirty when the unit was purchased and would not come clean. (*Id.* ¶ 32.) On February 4, 2010, Frey and a friend picked-up the motor home from Grumbine's. While in their possession, Grumbine's had replaced "the seal on the slide-out, attached the wires under the dining banquet, and cleaned the carpet in the bedroom area." (*Id.* ¶ 35.) On February 28, 2010, Frey again checked the motor home and found standing water on the floor behind the driver/passenger area. (*Id.* ¶ 37.)

## B.  **Procedural History**

On June 14, 2010, Frey filed a complaint in the Court of Common Pleas in Dauphin County, Pennsylvania, case no. 2010-CV-7908-CV, against Defendants Grumbine's RV, Damon Motor Coach, and Meyer's RV Centers, LLC. On July 14, 2010, Defendants filed a Notice of Removal. (Doc. 1.) On July 19, 2010, Defendants filed their motions to dismiss. (*See* Docs. 2-3.) On July 29, 2010, Defendants filed their briefs in support. (*See* Docs. 7-8.) On August 9, 2010, Frey filed a motion to remand, as well as a motion to stay briefing of Defendants' motions

to dismiss. (Docs. 10, 12.) Frey's motion to remand contested whether there was complete diversity of citizenship between the parties. On August 10, 2010, the court granted Frey's motion to stay briefing of Defendants' motion to dismiss. (Doc. 16.).

By memorandum and order dated September 15, 2010, the court denied Frey's motion for remand finding that there was complete diversity of citizenship of all parties. (*See* Doc. 20.) In the accompanying order, the court issued new briefing deadlines for Defendants' motions to dismiss. On September 29, 2010, Frey filed her briefs in opposition to Defendants' motions to dismiss. (Docs.21-22.) On October 8, 2010, Grumbine's and Damon filed their respective reply briefs. (Docs. 23-24.)

## II.      Legal Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)).

The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler,* 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a) (alterations

in original).)  In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196.  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Because subject matter jurisdiction in this case is based on diversity of citizenship, the court looks to the substantive law of Pennsylvania to determine the

rights and obligations of the parties. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). The law of the Commonwealth is declared by "its Legislature in a statute or by its highest court." *Id*. The Pennsylvania Supreme Court is the best authority on Pennsylvania law, but when the Supreme Court has not issued a clear pronouncement in a particular area, the court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data" to determine what the law is. *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661, 663 (3d Cir. 1980); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Opinions from lower Pennsylvania courts are not controlling, but they are entitled to significant weight when there is no indication that the Pennsylvania Supreme Court would rule otherwise.

## III.      Discussion

### A.      Damon's motion to dismiss

Damon argues that since it was the manufacturer of the motor home, not the seller, there was no contract between it and Frey, and Frey's claims for breach of contract, breach of good faith and fair dealing, and rescission of contract should be dismissed. Damon further argues that Plaintiff's claims for breach of the implied warranty of merchantability should be dismissed because the damages sought in the complaint are not recoverable under the Uniform Commercial Code. Damon argues that Frey's claim for breach of the implied warranty of fitness for a particular purpose should be dismissed because Frey did not purchase the motor home for a particular or extra-ordinary purpose. In addition, Damon argues that Frey's misrepresentation claim cannot succeed because no contract existed between it and

Frey and her reliance on the Restatement (Second) of Torts § 557 is misplaced. Finally, Damon argues that Frey's revocation of acceptance is invalid because Frey accepted no goods from Damon, and thus, necessarily cannot revoke acceptance of those goods. The court will address each of these issues in turn.

## 1. __Breach of Contract__

Under Pennsylvania law, the elements required to establish a breach of contract claim are (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003); *J.F. Walker Co., Inc. v. Excaliber Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002). Damon challenges whether Frey can meet the first element.

In her complaint, Frey identifies Damon as "a business entity who manufactures motor homes." (Doc. 1-2, Compl. ¶ 4.) She does not explicitly mention that Damon is responsible for manufacturing the motor home that she purchased, although this fact can reasonably be inferred from her allegation that she contracted to purchase a "2009 Damon Avanti class A motor home from Grumbine's." (*Id.* ¶ 6.) In Count I of her complaint, Frey asserts that she "contracted to buy a new motor home from Grumbine's." (*Id.* ¶ 40.) Although Frey states that "Defendants" (plural) have breached this contract, there are no averments which indicate that any contract exists as between Frey and Damon.

Attached to Frey's complaint are numerous documents, but is unclear whether Frey believes that any of them are actually the purchase contract. (*See* Doc. 1-2, Compl., Exs. A-C.) In fact, not much is clear from the attached documents as all of them are so blurry that they are either illegible or only partially legible.

The simple fact of the matter is that nowhere in the complaint does Frey allege facts raising the inference that a contract exists between her and Damon, let alone facts that "show" the existence of a contract. Accordingly, because Frey cannot meet the first, and most basic, element of a breach of contract claim—the existence of a contract—this cause of action against Damon fails as a matter of law. Although the court must grant leave to amend a complaint that is merely deficient, Frey's factual allegations regarding a contract between her and Damon are not merely deficient, but rather, nonexistent. Thus, the court concludes that leave to amend would be futile and will grant Damon's motion to dismiss Count I of Frey's complaint without further leave to amend.

## 2. **Claims linked to claim for breach of contract**

The failure of Frey to allege a breach of contract action as between her and Damon is fatal to Frey's claims against Damon for breach of the implied covenant of good faith and fair dealing, and rescission (Counts II and VII).

In *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992), the Pennsylvania Superior Court recognized that there was a general duty of good faith and fair dealing in the performance of contracts in Pennsylvania. The same court has also made it clear that while this duty exists, it exists as part and parcel of a claim for breach of contract, not as an independent cause of action. *See LSI Title Agency, Inc. v. Evaluation Services, Inc.,* 951 A.2d 384, 391 (Pa. Super. 2008); *See also Meyer v. Cuna Mut. Grp.,* 2007 WL 2907276, * 14 (W.D. Pa. Sept. 28, 2007) (stating "[a] party is generally precluded from maintaining a claim for the breach of an implied duty of good faith and fair dealing separate and distinct from the underlying breach of contract claim.") Accordingly, because Frey cannot maintain a breach of contract

claim against Damon, she cannot maintain a claim for breach of an implied duty of good faith and fair dealing. Thus, Count II of Frey's complaint against Damon will be dismissed.

The same applies for her claim in Count VII where she alleges a right to rescind the contract: In order to rescind a contract there must be a contract to rescind. Thus, because Frey cannot maintain a breach of contract claim against Damon, she cannot maintain her claims for rescission and Count VII will also be dismissed as against Damon.

### 3. Claims for Breach of Implied Warranty of Merchantability and Fitness for Particular Purpose

In Counts III and IV of her complaint, Frey asserts breach of warranty claims alleging that Damon violated the implied warranties of merchantability and fitness for a particular purpose. As to the former, Damon argues that Frey's merchantability claim fails because the damages sought are not recoverable under the Uniform Commercial Code ("UCC"). As to the latter, Damon asserts that Frey has not alleged that the motor home was for a particular purpose, but rather the ordinary use of a motor home – for recreational purposes or camping and traveling. The court will address each of these issues in turn.

### a. Implied Warranty of Merchantability

The implied warranty of merchantability serves to protect buyers from loss where goods purchased are below commercial standards. *See Borden, Inc. v. Advent Ink Co.,* 701 A.2d 255, 258 (Pa. Super Ct. 1997). Here, Damon argues not that the warranty itself is inapplicable, but rather that Frey is not entitled to seek recovery of a refund of the purchase price, damages for loss of use, damages for incomplete repairs, damages for mental distress, damages for continued loss of use

11

and enjoyment of the motor home, or attorney's fees for breach of the implied warranty of merchantability.

In her complaint, Frey alleges that as a result of Defendants' breach of the implied warranty of merchantability, she has suffered damages, "including but not limited to: (a) Inability to use the motor home since the contract date; (b) Inability to have the motor home fully repaired since the contract date; (c) Mental distress as a direct and proximate result of Defendants' breach; and (d) Continued loss of use and enjoyment of the motor home." (Doc. 1-2, Compl. ¶ 58.) As a result of these damages, Frey requests an award of the purchase price of the motor home – $97,984.65 – in exchange for her return of the motor home, as well as attorney's fees, and any other relief that may be just and proper. (*Id.*) Thus, in essence, Frey asks the court to make her whole and put her in the place that she would have been absent Defendants' alleged breach of the warranty of merchantability.

The measure of damages for breach of warranty under the UCC "is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount," 13 Pa. Cons. Stat. § 2714(b), however, the UCC also provides that "[i]n a proper case any incidental and consequential damages under section 2715 . . . may also be recovered, *id.* § 2714(c). Included in the list of incidental and consequential damages that are recoverable are "any other reasonable expense incident to the delay or other breach," *id.* § 2715(a)(3), and "any loss resulting from [the] general . . . requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise," *id.* § 2715(b)(1).

12

With the exception of the claim for attorney's fees, the damages Frey seeks for breach of implied warranty of habitability are compensable. Distilled to its essence, Frey asks the court to award a refund of the purchase price of the motor home in exchange for her return of her motor home as a consequence of the motor home not performing in a merchantable manner. This is consistent with a claim for consequential damages permitted by § 2715(b)(1), which allows a buyer to recover "any loss resulting from general . . . requirements and needs of which the seller at the time of contracting had reasons to know and which could not reasonably be prevented by cover or otherwise." *Id.* § 2715(b)(1). Surely, Damon was aware that purchasers of its motor homes would want to make use of the motor home for the general purpose of recreational travel, which, read in its entirety, Frey's complaint alleges that she was unable to do.

Accordingly, because Damon contests Frey's merchantability claim only to the extent of the damages that she claims, and the court finds that the claimed damages could fall within the allowable consequential damages afforded by the UCC, the court will deny Damon's motion to dismiss Count III of Frey's complaint.[3]

The court will, however, strike Frey's claim for attorney's fees. There is no contract between the parties and Frey asserts no basis upon which a claim for attorney's fees is compensable for a breach of the implied warranty of merchantability.

---

[3] It is immaterial that there is no privity of contract between Frey and Damon, the law in Pennsylvania is clear that for recovery for breach of implied warranties a party need not prove "privity of contract." *See Williams v. West Penn Power Co.*, 467 A.2d 811 (Pa. 1983); *Kassab v. Central Soya*, 246 A.2d 848 (Pa. 1960); *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1198 (Pa. Super. Ct. 1991).

### b.  <u>Implied Warranty of Fitness for Particular Purpose</u>

In Count IV of her complaint, Frey alleges that Damon breached the implied warranty of fitness for a particular purpose by providing a defective motor home.  The implied warranty that goods shall be fit for a particular purpose exists, under the UCC, where the seller at the time of contracting has reason to know of such purpose and of the buyer's reliance upon the seller's skill or judgment to select or furnish goods that are suitable for such purpose.  *See* 13 Pa. Cons. Stat. § 2315.

Damon alleges that since it did not sell the motor home to Frey, and since no contract existed between it and Frey, that Damon could not have known why or for what particular purpose Frey was purchasing the motor home.  Given the allegations in the complaint, the court agrees.  In Count IV, Frey alleges that her "purpose in buying the motor home was for recreational purposes, and to begin traveling and camping."  (Doc. 1-2, Compl. ¶ 64.)  Traveling, camping and recreation are the general purposes of a motor home, not particular purposes.

Furthermore, while Frey alleges that she relied on "Defendant's skill or judgment in selecting the motor home suitable to meet Plaintiff's particular purpose" this allegation immediately follows Frey's allegation that it was "*Grumbine's*, seller, [who] knew of had reason to know of the buyer's purpose."  (*Id.* ¶ 65.)  There are no allegations in the complaint that Frey relied on Damon's skill or judgment to select or furnish the motor home suitable for a particular purpose.

Accordingly, the court will grant Damon's motion to dismiss Count IV of Frey's complaint.  Although the court must grant leave to amend a complaint that is merely deficient, Frey's complaint is completely devoid of factual allegations suggesting that she purchased the motor home for a particular purpose at all, let

alone one that was known to Damon at the time of the purchase.  As such, the court

concludes that leave to amend would be futile and will grant Damon's motion to

dismiss Count IV of Frey's complaint.

### 4. <u>Misrepresentation</u>

In Count V of her complaint, Frey alleges that "Defendants made

fraudulent misrepresentations to Frey with the intention of inducing her into buying

the motor home."  (Doc. 1-2, Compl. ¶ 72.)  Specifically, she alleges that she was

informed that the motor home she was purchasing was new.  (*Id.* ¶ 71.)  Damon

asserts in its motion to dismiss that since Frey has failed to allege that she had a

contract with Damon, or that any Damon representatives made any representations to

her about the motor home, her misrepresentation claim fails as a matter of law.

In her brief in opposition to Damon's motion, Frey does not address this

argument.  In the context of appeals, the Third Circuit has made it clear that a party

who fails to brief an issue waives that issue.  *See Gorum v. Sessions,* 561 F.3d 179,

185 n.4 (3d Cir. 2009)(*citing Laborers' Intern. Union of N. Am., AFL-CIO v. Foster

Wheeler Energy Corp*., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless

a party raises it in its opening brief, and for those purposes a passing reference to an

issue . . . will not suffice to bring that issue before this court.") (internal quotations

and citations to authority omitted)).  The court sees no reason why this rule does not

extend to issues raised in this court.  *See D'Angio v. Borough of Nescopeck,* 34 F.

Supp. 2d 256, 265 (M.D. Pa. 1999) (deciding that the plaintiff's failure to address

particular claim in his brief in opposition to defendants' motion to dismiss amounted

to waiver of that claim).  Accordingly, the court will grant Damon's motion to

dismiss Frey's misrepresentation claim.

## 5. __Revocation of Acceptance__

In Count VI of her complaint, Frey attempts to revoke her acceptance of the motor home because the defects in the motor home have substantially impaired its value, and she accepted the motor home on the reasonable assumption that its non-conformity would be cured or repaired. Damon argues that Frey accepted the goods from Grumbine's not from Damon, and since she did not accept anything from Damon she cannot revoke her acceptance with respect to Damon. It also argues that Frey's revocation was not made within a reasonable time after she discovered the alleged defects as required by the UCC.

As to Damon's first argument that Frey may only assert a revocation of acceptance as against Grumbine's, Damon provides no case law on the subject. While the argument has some logical appeal, in the absence of case law to support it, the court will reject the argument in light of the well established rule in Pennsylvania that privity of contract between a buyer and a manufacturer no longer operates as a bar to recovery by a buyer. *See Moscatiello, supra,* 595 A.2d at 1203-04 ("[I]t is [u]ncontroverted that both horizontal privity, determinative of who may sue, and vertical privity, determinati[ve] of who may be sued, no longer operates in this Commonwealth. The law in Pennsylvania is clear that, for recovery for breach of implied warranties, a party need not prove 'privity of contract.'"(*citing Williams v. West Penn Power Co.*, 467 A.2d 811 (1983))). While the discussion of privity in *Moscatiello* concerned claims for breach of implied warranties, the court believes the logic is equally applicable to a case like the one *sub judice* because underlying all of Frey's claims is the assertion that the motor home was defective and the defects were never remedied. In the absence of authority to the contrary, the court concludes that

the lack of contractual privity between Damon and Frey is not fatal to Frey's effort to revoke acceptance of the motor home.

As to Damon's second argument, the UCC is clear that a party may revoke acceptance of goods "whose nonconformity substantially impairs its value," 13 Pa. Cons. Stat. § 2608(a), but that this revocation must occur "within a reasonable time after the buyer discovers" the nonconformity, *id.* § 2608(b). Courts in Pennsylvania have held that the definition of a "reasonable time" is a "question of fact to be resolved by the jury." *Cardwell v. Int'l Housing, Inc.,* 423 A.2d 355, 362 (Pa. Super. Ct. 1980).

In *Cardwell*, the court determined that a delay of approximately twenty-one months in revoking acceptance of a mobile home did not constitute unreasonable delay so as to preclude purchasers' revocation of acceptance where purchasers notified seller of defects shortly after they began residing in the home, seller's repairman expended considerable effort in attempts to correct defects thereafter, seller continued to be aware of purchasers' continuing dissatisfaction with the home, and it was not established that deteriorated condition of the home was caused by passage of time before revocation of acceptance, rather than latent defects in the home. *Id.*

In this case, Frey filed her complaint seven months after purchasing her mobile home. The delay in filing was ostensibly due to reasons similar to those in *Cardwell*, namely, it can be inferred that Frey wanted to first determine whether the problems could be fixed before she took the drastic step of revoking acceptance of the motor home. It appears that when it became clear that the defects could not be repaired, she contacted legal counsel and a case was filed. At this stage of the

proceedings, taking Frey's allegations as true, the court cannot conclude that Frey's revocation of acceptance is untimely as a matter of law. Accordingly, the court will deny Damon's motion to dismiss Count VI of Frey's complaint.

### B. Grumbine's Motion to Dismiss

Like Damon, Grumbine's asserts that each of Frey's claims fail as a matter of law. The court will address each of their arguments in turn.

### 1. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

In its motion, Grumbine's asserts that Frey's breach of contract action fails because Frey has (1) failed to allege the specific contract provision violated by Grumbine's; and (2) because the contract contains a limitation of damages provision and the damages sought by Frey are excluded. Consequently, according to Grumbine's, because Frey cannot maintain her breach of contract claim she cannot maintain her claim in Count II for breach of the implied covenant of good faith and fair dealing.

As stated *supra,* pursuant to Pennsylvania law, the elements required to establish a breach of contract claim are (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Ware v. Rodale Press, Inc*., 322 F.3d 218, 225 (3d Cir. 2003); *J.F. Walker Co., Inc. v. Excaliber Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. 2002).

Grumbine's concedes that a contract between the parties existed and that Frey has alleged that she was damaged; however, it contends that Frey has not alleged a breach of a duty imposed by the contract, and as such, she cannot maintain her cause of action. The court disagrees. In her complaint, Frey states:

Defendants have breached the contract in the following way, including but not limited to:

    a. Failing to provide a new motor home to Ms. Frey;

    b. Failing to fully inspect the motor home prior to the sale and repair any known damages;

    c. Failing to fully repair damages made known to Defendants by Ms. Frey at the time of purchase and as soon as Ms. Frey reasonably became aware of them; and

    d. continually failing to repair damages after numerous attempts by Ms. Frey to make the motor home available for said repairs.

(Doc. 1-2, Compl. ¶ 43.)

Grumbine's contend that these allegations are insufficient because "although Plaintiff baldly asserts . . . that this Defendant breached its contract in 'failing to provide a new motor home to Ms. Frey,' nowhere in the Complaint does Plaintiff allege that what she received was not a new motor home, but was instead, a used motor home."  (Doc. 7, Grumbine's Br. in Supp. of Mot. to Dismiss at 4 (quoting Compl. ¶ 43).)

Although not a model of pleading clarity, Frey's complaint alleges sufficient facts supporting her beach of contract claim to survive a motion to dismiss. For example, in addition to the allegations contained under the heading of Count I, Frey incorporates all of the allegations that she made in previous sections of her complaint, (*see* Doc. 1-2, Compl. ¶ 38), including the allegation made in Paragraph 11.  There, Frey alleges:

After discussing [the problems she found with the motor home] with Defendant Grumbine's, Grumbine's assured Ms. Frey of the following, including but not limited to:

    a. *That this was a new unit;*

      b.  That they promised to repair or remediate
           all discrepancies;
      c.  That they would change the oil for no
           charge at the first oil change due to the
           mileage (5,298 miles); and
      d.  To contact Mike Hartz from Grumbine's of
           any further problems.

(Doc. 1-2, Compl. ¶ 11 (emphasis added).)  These allegations refute Grumbine's

contention that Frey did not allege that Grumbine's ever represented that the motor

home was new, and they permit the inference that Frey believes the motor home she

received was in fact not new.  They also refute Grumbine's contention that there

were no promises made that Grumbine's would repair the defects.  Combined with

the allegations made under the heading of Count I, the court believes that these

allegations are sufficient to show an entitlement to relief on Frey's breach of contract

claim as it relates to her allegation that the motor home she received was not new.

      In its motion, Grumbine's argues that any oral representations are not a

part of the agreement between it and Frey because the agreement includes an

integration clause.  Grumbine's attaches to its complaint what it purports is the

agreement between the parties.  Although much of the agreement is illegible because

of the poor quality of the photocopying, the agreement does in fact state that the

agreement contains the entire understanding between the parties and that no other

representations or inducements, verbal or written, have been made.[4]  (*See* Doc. 4.)

However, it axiomatic that "an integration clause is temporal in nature, and thus, the

timing of its execution will necessarily limit its effect."  *Atlantic Pier Assocs., LLC v.*

*Boardakan Rest. Partners,* 647 F. Supp. 2d 474, 493 (E.D. Pa. 2009).  While the

---

      [4]     It should be noted that this clause, while in all capital letters, is printed in font that is
no more than one-sixteenth of an inch in height.

representations at issue were made around the time of the purchase, the complaint alleges that they were made subsequent to the contract. (*See* Doc. 1-2, Compl. ¶ 41.) Certainly an integration clause cannot limit the effect of post-agreement representations.

More importantly, however, even assuming that the agreement attached by Grumbine's to its motion is the agreement between the parties and that, as alleged by Grumbine's, it does not contain a contractual provision stating that Grumbine's inspected the vehicle and will repair any defective condition made known to it, the allegations made by Frey are nonetheless actionable under a breach of contract theory because they violate the implied covenant of good faith and fair dealing. This is the claim the Frey presents in Count II of her complaint.

"In Pennsylvania, a covenant of good faith and fair dealing is implied in every contract. Pennsylvania law does not, however, recognize an independent claim for breach of the implied covenant of good faith and fair dealing." *See Lyon Fin. Servs. v. Woodlake Imaging, LLC*, No. 04-3334, 2005 U.S. Dist. LEXIS 2011, *21 (E.D. Pa. Feb. 9, 2005) (citations omitted). Thus, the covenant arises out of and supplements a cause of action for breach of contract, but is not separate from that cause of action. Accordingly, Pennsylvania case law has advanced the proposition that "courts are not generally available to rewrite agreements or make up special provisions for parties who fail to anticipate foreseeable problems," *In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47, 56 n. 7 (Pa. 1987); *see also, Stonehedge Sq. L.P. v. Movie Merchants, Inc.*, 685 A.2d 1019, 1025 (Pa. Super. Ct. 1996) ("[T]he law will not imply a contract different than that which the parties have expressly adopted.") (citations omitted).

At the same time, in Pennsylvania the general duty of all parties to a contract includes that duties of good faith and fair dealing in the performance of a contract as advanced in the Restatement (Second) of Contracts § 205. *See Zaloga v. Provident Life and Accident Ins. Co. of Am.*, 671 F. Supp. 2d. 623, 629-30 (M.D. Pa. 2009) (sitting in diversity and predicting that the Supreme Court of Pennsylvania would adopt § 205 and impart a contractual obligation of good faith and fair dealing to all contracts if it were squarely presented with the issue); *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151, 153 (Pa. Super. Ct. 1989). A similar requirement has been imposed in Pennsylvania for contracts involving the sale of goods under the UCC. *See* 13 Pa. Cons. Stat. § 1203. *Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992).

This obligation of good faith requires an "[h]onesty in fact in the conduct or transaction concerned." *Somers*, 613 A.2d at 1213 (quoting, 13 Pa. Cons. Stat. § 1201(20)). Bad faith is context specific and the question of what constitutes a breach of the covenant will depend greatly upon the scenario presented and will vary from situation to situation. At a minimum it includes "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers*, 613 A.2d at 1213 (quoting Restatement (Second) of Contracts, § 205 cmt. d (1981)).

Thus, the Court must consider whether imposition of a covenant of good faith and fair dealing would be applicable to the allegations made by Frey in her complaint, specifically, that Grumbine's made no effort to repair the defects that Frey complained of, and that Grumbine's failed to inspect and repair any problematic

conditions on its own. Viewing the allegations against Grumbine's as true, as the court must do at this stage in the litigation, as well as in a light most favorable to Frey, a claim of breach of the implied covenant of good faith and fair dealing is feasible and, as a result, Frey's complaint survives a motion to dismiss.[5]

Again, this is not to say that the implied covenant of good faith overrides the express terms of a contract. To the contrary, the covenant of good faith does nothing more than fill in those terms of a contract that have not been expressly stated. In the context of this case, it seems apparent that when contracting for a new motor home Frey believed that she was getting a new motor home free of defects, which necessarily implies that it was inspected to ensure that it was free of defects, and that to the extent that defects existed and were made known, that Grumbine's would repair the defects to ensure that Frey received the benefit of the bargain.

Finally, Grumbine's also asserts that Frey's breach of contract claim should be dismissed because it seeks damages in excess of those permitted in the contract which contains a limitation of damages clause. As indicated above, the contract attached by Grumbine's to its motion to dismiss, which it purports to be the contract at issue in this case, is partially illegible because of the poor quality of the photocopy. As a result, the limitation of damages provision relied on by Grumbine's to support its argument cannot be read in its entirety. At this stage of the litigation,

---

[5]        The court is cognizant of the fact that Frey has separately stated in Count II of her complaint a cause of action for breach of the implied covenant good faith and fair dealing. Despite being titled as a separate count, it is clear from the allegations in Court II that Frey's assertion of the implied covenant of good faith and fair dealing arises from the contract between her and Grumbine's and that Frey is not asserting a separate cause of action. Thus, the court construes the allegations contained in Count II as an iteration of Frey's breach of contract claim to include a breach of the implied covenant of good faith and fair dealing rather than a cause of action wholly separate from the contract. Accordingly, the court will deny Grumbine's motion to dismiss Count II of Frey's complaint, and will construe the claim as inextricable from her claim in Count I for breach of contract.

the court must take as true the allegations contained in Frey's complaint and resolve all inferences in her favor. As such, the court will not dismiss Frey's breach of contract claim based solely on a blurry, only partially-legible contract attached to the opposing party's motion to dismiss. These issues are more appropriately addressed at a later stage of the proceedings.

Thus, read in its entirety, Frey's complaint adequately sets forth a basis for a breach of contract and a breach of the implied covenant of good faith and fair dealing. Accordingly, the court will deny Grumbine's motion to dismiss Counts I and II.

## 2. **Implied Warranties**

In its motion to dismiss, Grumbine's contends that Frey's claims for breach of the implied warranties of merchantability and fitness for a particular purpose (Counts III & IV) must fail because these warranties were disclaimed in the contract. Separately, like Damon, Grumbine's argues that Frey's claim for breach of the implied warranty of fitness for a particular purpose fails because the complaint fails to allege that she purchased the motor home for a particular purpose as opposed to the ordinary purposes of recreational travel. The court will address these issues in turn.

### a. **Warranty of Merchantability**

"The UCC defines the implied warranty of merchantability as a warranty that the goods will pass without objection in the trade and are fit for the ordinary purposes for which such goods are used." *Moscatiello v. Pittsburgh Contractors Equipment Co.*, 595 A.2d 1190, 1193-94 (Pa. Super. Ct. 1991) (*citing* 13 Pa. Cons. Stat. § 2314). This warranty "is so commonly taken for granted that its

exclusion from a contract is a matter threatening surprise and therefore requiring special precaution." 13 Pa. Cons. Stat. § 2314, cmt. n. 11. Thus, to exclude the implied warranty of merchantability, the exclusionary language must mention the term "merchantability" and be conspicuous. *Id.* § 2316(b). This is designed to protect a buyer from unexpected and unbargained for language of disclaimer. *Id.* at cmt. n. 1.

For purposes of waiver, a term or clause is "conspicuous" when it is "so written that a reasonable person against whom it is to operate ought to have noticed it. . . . Language in the body of a form is conspicuous if it is in larger or other contrasting type or color. . . ." 13 Pa. Cons. Stat. § 1201(10). The primary object of the conspicuousness requirement is to avoid fine print waiver of rights by the buyer. *Moscatiello,* 595 A.2d at 1193 (*citing Greenspun v. Am. Adhesives, Inc.*, 320 F. Supp. 442 (E.D. Pa. 1970)). Whether a disclaimer is conspicuous is an issue for the court to decide as a matter of law. 13 Pa. Cons. Stat. § 1201, cmt. n. 10.

The exclusionary clause at issue here is located on the reverse side of a standard sales contract. As discussed above, the copy of the sales agreement appended to Grumbine's motion to dismiss is only partially legible. This includes the provision at issue here, which purports to disclaim the implied warranties of merchantability and fitness for a particular purpose. For this reason alone the court could demur on deciding whether these warranties were waived; however, what is legible does not meet the definition of conspicuous, thus, the court finds, for the purpose of deciding Grumbine's motion to dismiss, that these waivers have not been disclaimed.

At the bottom of the front of the form, in what appears to be a box with a black background and white letters, is the phrase in capital letters: "BUYER(S) ACKNOWLEDGE RECEIPT OF A COPY OF THIS ORDER AND THAT BUYER(S) HAVE READ AND UNDERSTAND THE BACK OF THIS AGREEMENT."  (Doc. 4, Purchase Agreement.)

The reverse side of the form contains fourteen numbered paragraphs which fill the page, top to bottom and side to side, in extremely small type, approximately one-sixteenth inch in height.  The warranty disclaimer is buried in paragraph number ten at the bottom one-third of this page.  Though the operative language of the disclaimer is set forth in capital letters, the capital letters are only slightly larger, but of the same color and in the same type style as the rest of the printing.  The size of the type of even the capital letters is so minute that it simply does nothing to attract attention to the clause.

Upon review of the agreement, the court concludes that this disclaimer did not adequately put Frey on notice that substantial rights of hers were being relinquished.  Even the language on the front of the contract referring to terms and conditions on the reverse side was not particularly conspicuous or helpful.  No reference on the front of the agreement indicates that Frey was waiving important rights on the reverse side.[6]  Thus, the court concludes for the purposes of deciding Grumbine's motion to dismiss, that the warranty disclaimer was not conspicuous and therefore cannot serve as the basis for a dismissal of Frey's claim for breach of the

---

[6]     The fact that the disclaimer is located on the reverse side of a contract does not standing alone render the disclaimer inconspicuous, nonetheless, the disclaimer itself must be conspicuous and the front of the document must contain noticeable reference to the terms on the reverse side.  *See Moscatiello,* 595 A.2d at 1194 (*citing Jaskey Finance and Leasing v. Display Data Corp.*, 564 F.Supp. 160 (E.D. Pa.1983)).  The purported contract at issue contains neither.

implied warranty of merchantability.[7]  Accordingly, the court will deny Grumbine's motion to dismiss Count III of Frey's complaint.

### b.  __Warranty of Fitness for a Particular Purpose__

In addition to its waiver argument, Grumbine's also challenges whether Frey has adequately stated a claim that she purchased the motor home for a particular purpose as opposed to its ordinary purpose.  In her complaint, Frey states that her purpose in purchasing the motor home was for recreational purposes, and to begin traveling and camping.  (Doc. 1-2, Compl. ¶ 64.)

The UCC implies a warranty of fitness for a particular purpose when "the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods."  13 Pa. Cons. Stat. § 2315. The term "particular purpose" has a specific meaning that distinguishes this warranty from that of merchantability:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

---

[7]      The court's decision does not preclude Grumbine's from introducing evidence at a later stage of the proceedings that would show, despite the inconspicuous nature of the disclaimer, that Frey was in fact aware of the disclaimer at the time of her purchase.  For now, however, the court takes at true Frey's contention that the warranty or merchantability was not disclaimed by any of the parties. (Doc. 1-2, Compl. ¶ 56.)

*Visual Commc'ns, Inc. v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 611 F. Supp. 2d 465, 471 (E.D. Pa. 2009) (*quoting Gall by Gall v. Allegheny Cnty. Health Dep't*, 555 A.2d 786, 790 (Pa. 1989) (quoting 13 Pa. Cons. Stat. § 2315 cmt. n. 2)).

Here, Frey alleges no particular purpose for the purchase of her motor home. Motor homes are meant to be used for the recreational purposes of traveling and camping. Accordingly, because Frey has failed to allege that her motor home was purchased for a particular purpose, she cannot sustain a cause of action for breach of the implied warranty of fitness for a particular purpose. Although the court must grant leave to amend a complaint that is merely deficient, Frey's complaint is completely devoid of factual allegations suggesting that she purchased the motor home for a particular purpose. As such, the court concludes that leave to amend would be futile and will grant Grumbine's motion to dismiss Count IV of Frey's complaint.

### 3. **Misrepresentation**

In Count V of her complaint, Frey alleges that "Defendants made fraudulent misrepresentations to Frey with the intention of inducing her into buying the motor home." (Doc. 1-2, Compl. ¶ 72.) Specifically, she alleges that she was informed that the motor home she was purchasing was new. (*Id.* ¶ 71.)

Grumbine's asserts that Frey cannot maintain a misrepresentation claim under the Restatement (Second) of Torts § 557 because that section requires a fraudulent misrepresentation that induces another to do an act "that would be lawful if the representation were true but which is in fact unlawful" because of the misrepresentation. RESTATEMENT (SECOND) OF TORTS § 557 For her part, Frey

contends that she has not alleged any § 557 claims, but instead is bringing either a negligent misrepresentation or an intentional misrepresentation claim.

In her complaint, despite her contention to the contrary, Frey asserts that she is entitled to compensation "[p]ursuant to Restatement 2d of Torts, § 557" for the losses the she sustained by Grumbine's misrepresentation. (Doc. 1-2, Compl. ¶ 70.) To the extent Plaintiff seeks to assert a claim under § 557 she has failed to allege any facts suggesting that she was induced to commit an unlawful act by any representation of Grumbine's.

Frey's allegations do however state a cause of action for negligent and/or intentional misrepresentation. To demonstrate negligent misrepresentation, plaintiff must establish: (1) a misrepresentation of a material fact; (2) made under circumstances in which the individual making the misrepresentation ought to have know its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation. *Al Makaaseb Gen. Trading Co. v. U.S. Steel Intern., Inc*., 412 F. Supp. 2d 485, 498 (W.D. Pa. 2006) (*citing* Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994).) Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another. *See Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

To demonstrate intentional misrepresentation, a plaintiff must establish: "(1) a representation; (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury proximately caused by the reliance." *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002).

Here, the allegations that Frey makes concerning the representations of Grumbine's employees, when taken as true, could constitute either negligent or intentional misrepresentation. One need only look later in Frey's complaint under her claim for rescission of contract to see that there is sufficient factual information contained in the complaint to both put Grumbine's on notice about the nature of the claims that Frey alleges, as well as show that Frey is entitled to relief.

For example, Frey asserts that after discussing the problems she found with the motor home with Grumbine's they assured her that the unit was new and that they would fix all of the problems that she identified. (Doc. 1-2, Compl., ¶ 11.) Frey also alleges that she was told that the motor home would be in the same condition as the one she and her husband had seen at the Hershey RV show the month before the contract date. (*Id.* ¶ 92.) Frey alleges that subsequent events, including conversations with Grumbine's employees, led her to conclude that these representations were not true. She then specifically lists six instances where she discovered problems with the motor home that led her to conclude that the representations were false. (*See id.* ¶ 94.)

While it no doubt would have been preferable for Frey to have grouped her allegations of misrepresentation together rather than to have spread them throughout the complaint, the reality is that the complaint contains sufficient factual allegations to allow the court to do more than simply assume the possibility that Frey is entitled to relief. There is no doubt that much of what Frey alleges will be vigorously disputed by Grumbine's, but for pleading purposes the court finds Frey's allegations of misrepresentation to be sufficient to survive a motion to dismiss. Thus, the court will deny Grumbine's motion to dismiss Count V.

#### 4. <u>Revocation of Acceptance</u>

In Count VI of her complaint, Frey attempts to revoke her acceptance of the motor home because the defects in the motor home have substantially impaired its value, and she accepted the motor home on the reasonable assumption that its non-conformity would be cured or repaired. Grumbine's argues that Frey's revocation fails because (1) it was not made within a reasonable time after she discovered the alleged defects, (2) there is no valid underlying basis for the revocation, and (3) the revocation is barred under the contract.

As to Grumbine's first argument, the court's adopts its analysis in Part III.A.5., *supra*, where it discussed an identical argument made by Damon. Courts in Pennsylvania have held that the definition of a "reasonable time" is a "question of fact to be resolved by the jury," *Cardwell v. Int'l Housing, Inc.,* 423 A.2d 355, 362 (Pa. Super. Ct. 1980), and at this stage of the proceedings, taking Frey's allegations as true, the court cannot conclude that Frey's revocation of acceptance is untimely.

Grumbine's also argues that Frey cannot attempt to revoke her acceptance because she cannot establish any underlying breach of warranty as grounds for revocation because these warranties were properly excluded. The court has already concluded based on the allegations contained in Frey's complaint and the documents presented to it thus far that the purported waiver of the implied warranty of merchantability is insufficient. *See* Part III.B.2.a, *supra.* Thus, Grumbine's argument is without merit.

Finally, Grumbine's argues that Frey's revocation of acceptance claim should be dismissed because it seeks a remedy that is excluded by the limitation of damages claims contained in the contract. The court has already addressed this issue

as it relates to Frey's claim for damages for breach of contract. *See supra,* Part

III.B.1.  For the reasons articulated therein, the court will not dismiss Frey's

revocation claim based on a blurry, only partially-legible contract provision attached

to the opposing party's motion to dismiss.  These issues are more appropriately

addressed at a later stage of the proceedings.  Accordingly, the court will deny

Grumbine's motion to dismiss Count VI of Frey's complaint.

### 5. <u>Rescission of Contract</u>

In Count VII of her complaint, Frey asserts that she is entitled to rescind

the contract based on the alleged fraudulent misrepresentations made by Grumbine's.

For its part, Grumbine's contends that this claim must fail because it seeks rescission

based on the alleged misrepresentations that were not well plead, the count seeks

damages which are not recoverable, and, finally, Frey's claim for rescission was

untimely.

As to the first issue, the factual allegations serving as the predicate to

her claims for rescission are sufficiently detailed that taken as true, they give rise to

the right to rescind the contract.  Frey contends that she was affirmatively and

materially mislead about the condition of the motor home.  The allegations contained

here do not require the court to engage in unfounded speculation to conclude that, if

proven, Frey would be entitled to relief.  Accordingly, the court will not grant

Grumbine's motion to dismiss this count on the basis of insufficient specificity.

The second and third issues raised by Grumbine's—that Frey requests

damages that are not recoverable in a claim for rescission and that her claim is

untimely—relate to one another.  Citing the Restatement of Contract, Grumbine's

contends that Frey is not entitled to claim a return of the purchase price "unless

promptly after knowledge of the breach [she] returns or offers to return what [she] has received in substantially as good condition as when it was transferred to [her]." (Doc. 7, Br. in Supp. of Grumbine's Mot. to Dismiss at 17-18 (*citing Galati v. Potamkin Chevrolet Co.,* 181 A.2d 900, 902 (Pa. Super. Ct. 1962) (*citing* RESTATEMENT OF CONTRACTS § 349(1))).

While it is true that, like her claim for revocation of the contract, Frey must make a prompt and timely notice of rescission, she should not be penalized for having attempted to resolve the problems before exercising such a drastic remedy. Accordingly, the court concludes that because whether Frey's attempt to rescind the contract was timely is a question of fact subject to dispute, it cannot be resolved at this stage of the proceedings. Thus, the court will deny Grumbine's motion to dismiss Count VII of Frey's complaint.

## IV.        Conclusion

In accordance with the foregoing, the court will grant in part and deny in part Damon's motion to dismiss. Specifically, the court will grant Damon's motion as to Counts I (breach of contract), II (implied covenant of good faith and fair dealing), IV (warranty of fitness for a particular purpose), V (misrepresentation), and VII (rescission of contract) of Frey's complaint. The court will deny Damon's motion as to Counts III (breach of implied warranty of merchantability) and VI (revocation of acceptance), however, the court will strike Frey's claim for attorney's fees for beach of the implied warranty of merchantability.

The court will also grant in part and deny in part Grumbine's motion to dismiss. The court will grant Grumbine's motion to dismiss Count IV, her claim for

breach of the implied warranty of fitness for a particular purpose.  The court will deny Grumbine's motion to dismiss the remaining counts.

The court takes this opportunity to remind that parties that the court has available a mediation program that may assist them in resolving their differences and bridging the impasse that currently exists between them.  Should the parties desire to submit this matter to mediation they should contact the court to request that a mediator be appointed.  An appropriate order follows.

s/Sylvia H. Rambo
United States District Judge

Dated:  November 15, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KATHERINE A. FREY,          :       CIVIL NO. 1:10-CV-1457

         **Plaintiff**          :

       **v.**           :

**GRUMBINE'S RV;**          :
**DAMON MOTOR COACH; and**    :
**MEYER'S RV CENTERS, LLC,**    :

         **Defendants**        :

# O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT:**

(1)    Defendant Damon Corp.'s, designated as Damon Motor Coach, Motion to Dismiss, (Doc. 2), is **GRANTED IN PART AND DENIED IN PART** as follows:

       (a)  The motion is **GRANTED** as to Counts I, II, IV, V, and VII of Frey's complaint; and,

       (b)  The motion is **DENIED** as to Counts III and VI, but Plaintiff's claim for attorney's fees contained in Count III is stricken.

(2)    Defendant Meyer's RV Centers, LLC d/b/a Grumbine's RV, designated as separate Defendants, Motion to Dismiss, (Doc. 3), is **GRANTED IN PART AND DENIED IN PART** as follows:

(a)  The motion is **GRANTED** as to the allegations contained in Count IV; and,

(b)  The motion is **DENIED** as to all other claims.

s/Sylvia H. Rambo
United States District Judge

Dated:  November 15, 2010.